The next case for today is 2021-0071 United States v. Joel Reyna-Aragon. Mr. Wright, you may proceed. Thank you, your honor, and may it please the court. My name is Matthew Wright. I'm here on behalf of Joel Reyna, and today we're asking the court to vacate his federal prison sentence of two constitutional violations. The first violation was of the ex post facto clause of the Constitution, and the government has conceded that that constitutional violation took place. The second violation was of the due process clause of the Fifth Amendment, and specifically reliance on or consideration of the mere fact of an arrest in calculating that sentence. At a minimum, the second error precludes any attempt by the government to show that the first error was harmless beyond a reasonable doubt. Turning to the first error, your honors, everyone agrees that it was preserved, that it is a constitutional violation, that review in this court is de novo, and that the government bears a heavy burden of proving that it is harmless, and we contend the government must prove that it is harmless beyond a reasonable doubt, exactly because it is a constitutional error, and under this court's precedent, the standard is the district court would impose the same sentence for the same reasons. I'm sorry, you were about to tell us, and I interrupted, but could you tell us what our same sentence is? We have probably a continuum of cases, and can you tell us where this is on that continuum? Your honor, I can. I will say that for purposes of this case, Ibarra-Luna sets the proper standard. The government cited Ibarra-Luna in its standard of review section, I think it's on page five of the government's brief, if I'm wrong about that, I can tell you in rebuttal, and this is a constitutional error, so in a mere guideline error context, Ibarra-Luna says that the government must convincingly demonstrate the same sentence for the same reasons. Here, we have a constitutional error, and so the government's burden is even higher. That is the burden of proof beyond a reasonable doubt. Now, I believe what you're getting at, Judge Elrod, is there is another line of cases called the Richardson line of cases. If you twist my arm, I will talk about Richardson, but given that the government has cited Ibarra-Luna, I would prefer to proceed on that one. It will come as no surprise to you that we typically would argue in the Federal Public Defender's Office that the broadest reading of Richardson is no standard at all. It is completely inconsistent with the idea that the government should have to bear the burden of proof that an error is harmless, and in fact, the government here was in the best position to avoid this situation. So, whichever standard- It doesn't matter because of the second error, though, that we don't have to resolve this problem because there's a due process error on top of this. So, even a statement by the district court is not going to get them over the goal line. That's correct, Your Honor. That's correct, Your Honor. I would say, particularly under the Ibarra-Luna standard, that is same sentence for the same reasons. One of those reasons is illegal, and so we know that they cannot satisfy that one. Moreover, we do contend the second error is itself reversible, but if I could respond directly to your point about why this error, the first error, is not harmless, there are three reasons I would like the court to consider. First, the sentence that the district court imposed was within the erroneous guideline range, and the court cited its position relative to that erroneous guideline range in defending the sentence. The court said this is not the bottom of the range, but it's near the difference of 20 months from the low end and 25 months on the high end. Second, Your Honor, the court, the parties, probation devoted a lot of time and energy to addressing this constitutional question, and you may recall it was an unsettled question at the time, and the government fought very hard because the government knew that the guideline range would exert substantial influence on the ultimate sentence, so if you look to the way the parties, the court, and probation addressed this, this was not something that didn't matter to the ultimate sentence. It was something that ultimately drove that sentence, and third, as we've argued, the second error precludes any finding that this district court would impose a sentence, the same sentence, for the same reasons. Of course, the court wouldn't say it's near the bottom of the range. It would be a substantial upward departure, and also the court could not say there has been an arrest but not a prosecution in 2001 in support of its finding that the criminal record was serious, serious offenses because... Counselor, are you arguing simply that a mention of the arrest creates the problem, or is there a difference between the district judge reciting certain facts that may appear in the pre-sentence report and pointing out that that resulted in an arrest? I guess to rephrase my question, is there a difference between the district judge saying, well, I see here you've been arrested on such and such a day for such and such a crime, as opposed to the district judge saying, in other words, reciting the facts that ultimately led to arrest? Because in this case, and I think some of the other ones that you cited, the arrest doesn't result in a conviction. That's correct, your honor, and the arrest here did not even result in a prosecution, as the district court explicitly found. Now, the pre-sentence report, which was not objected to by either party, said that the grand jury returned a no bill. I have not been able to get a copy of that document. I'd like to be able to submit that to you, but I think we're agreed that nothing went further than the grand jury stage. What else was in the PSR about that no true bill? What else is recited that the district judge should not have considered? Is there any factual statements about why that grand jury was looking into that? Your honor, the portion of the PSR quoted a portion of a complaint. It's essentially the charging language. It is the language that would have appeared in an indictment if the grand jury had returned it. Now, I believe what you may be getting at is there are cases from the Fifth Circuit that have upheld a district judge that says, I know the grand jury said there was no bill here, but I find that there is sufficient evidence defined by a preponderance of the evidence that you did that or you did something like that, etc. Those are the cases cited in my response to the government's 28-J letter. That is not what happened here. The court did not find that he had committed a sexual assault or an attempted sexual assault in 2001, a second time. This court said twice, not a prosecution, but an arrest. The court was careful not to go further than the mere fact of the arrest. In fact, the court refused to follow the prosecutor's suggestion that the court could infer because there had been a modification in terms of his probation, an extension of the terms and some confinement added. You could infer that there was some fire there behind that smoke. The court said, I can't do that. I don't know that they did what the prosecutor says, but I know that there was an arrest. To go back to the beginning of your question, is there a difference or what is the court allowed to do? The court's precedent from pre-guidelines time says you cannot consider it. An arrest alone is not enough or an arrest is fully consistent with innocence. In the cases that the court has upheld such factual findings in spite of a grand jury, which is typically better positioned to collect evidence and to decide on a lower standard, this court has done so on the basis of extensive factual development that could have been litigated in sentencing. If that had happened here, we would have had opportunity to protest it and say, no, those facts are not right. We did not object to this paragraph in the PSR because it correctly reported that piece of the complaint, the charging language that would have been in an indictment had it charged. There's no motion, if I understood what you just said, there was no motion to strike from the PSR any type of factual statements relative to the arrest. That's correct, your honor, because and this may be the dispute I have with my friend is that he says by adopting the PSR, the district court adopted the finding that these facts were true. That would come as a surprise to my colleague in the trial division and it would come as a surprise to me. I'm not sure I would have objected to this language in the pre-sentence report because it's true. The complaint does have that language in it, but it went no further than that. I would also say if we knew nothing else, the judge just said, you know, you had committed another offense. Well, maybe we could say that she was relying on the complaint implicitly or whatever evidence or information might've supported that. That is not what happened here. The court said an arrest, but not a prosecution and that's it. No, I find that you did this. That isn't an usual thing for a federal judge to do, particularly 20 years after the event with no documentation, no evidence, no suggestion of interview of witnesses or corroborating evidence. All we have is the recitation of the content of a charge that never was. That is basically the situation. This court's classic cases. There are the two Joneses, which I get confused, the Ernest Jones case in 2007 and Robert Jones in 2006. Those are carried forward to more recent decisions. Going back at least, I think one of those Jones cases cites one called Cantu Dominguez in 1990. This is pretty much black letter law. It's very clear that a judge plainly errs when the judge relies on the mere fact of an arrest. I would also point out that the reason the court cited it, in other words, this wasn't just a recitation of things that had happened in the past. The court was defending the within guideline sentence against a very substantial argument for a downward departure. My client has a very strong case for a cultural assimilation downward departure on the basis of the fact that his parents brought him here when he was three, and he grew up and went to high school in this same little town with all of the people that were involved in all of those circumstances back then. It was 20 years ago that that happened. All of his family got legal status here. Everyone is here. Moreover, my client, understanding from previous encounters that he would be in trouble if he came back, left the country for 10 years and came back for reasons that are laudable, not culpable reasons. They're laudable. Now, we say that, nonetheless, it is a violation of our country's immigration laws and we have the right to imprison you. In doing that, we are furthering the rule of law, and I would submit that the rule of law requires vacating the sentence because the district court violated two constitutional provisions in choosing the five-year sentence. Now, if I could turn briefly to the reasonable doubt standard, because the court's cases do not typically focus on the constitutional errors and the convincing showing that required for mere guideline errors. Before you do that, tell us exactly what you would wish us to hold. I would wish you to hold, first of all, even though it's been conceded that there was an ex post facto violation here. In other words, Mr. Reyna was right in all of those pages of fighting, so you have committed that. Second of all, the government has failed to show beyond a reasonable doubt and convincingly that the district court would have imposed the same sentence for the same reasons. Now, obviously, I would love it if you said not only that, but you should give him an award of money damages, release him immediately, but I don't expect that from this court because you are an appellate court. You are reviewing what the district court did, and it is possible. Given a more substantial showing by the government, the sentence could be the same, or it could be lower. We don't know exactly what will happen, but on the first issue in particular, it's not my burden to show that. So he's a manly man for re-sentencing? Correct, Your Honor. I would ask that the court act somewhat swiftly. I don't have the date, but given the five-year sentence, once he got out of state custody, the time started counting against him, and so there's some timeliness before he enters what we colloquially refer to as the bonus time for this sort of error. If the court were to vacate and reverse, it would be bad if the district court decided to impose a lower sentence but couldn't because he had already over-served what that would be. Right, and you understand that when I ask this, I'm just asking, assuming arguendo, I'm not foreshadowing or anything, but this bonus time problem, to the extent it exists, we need to be made aware in every case, and that's a possibility. We should check too, but we can benefit from that advice. Certainly, Your Honor, and I'm not sure that I could do it before rebuttal today, but after this argument, I can submit a letter with the exact projected release date from the Bureau of Prisons. I think we weren't certain at the time of briefing how they were going to calculate the back time, and there was a dispute about that, and the court said, I'm going to leave that up to the Bureau of Prisons. But in any event, I can tell you it's not immediate. It's not tomorrow. It's not next week. I don't even think it's next month. It may be into next year, but I'm just saying there is – given that there are between 20 and 25 months of delta between the two guideline ranges, the bonus time will begin much quicker than typical. I can see that I'm running out of time. If there's no more questions at this point, I have reserved some time for rebuttal. Thank you. Mr. Portugal? May it please the court, Brian Portugal for the United States. The ex post facto issue in this case is harmless. The district judge was quite clear on the record, page 104, and I will quote, I would have given him 60 months if the ex post facto law had been in place or not. That is more than satisfactory of, for example, the Seventh Circuit opinion cited by this court and Martinez-Ovalle, footnote 34 of the opinion. It certainly satisfies this court's unpublished opinion and Segura Resendez, and as cited again by Martinez-Ovalle and footnote 34, it satisfies the standards set out in Pew for harmless error of ex post facto issues. What do you do with the Bar-a-Luna? Bar-a-Luna had the problem, Your Honor, that the district court there did not say how it selected its sentence, and it didn't say whether its sentence was influenced by the guidelines. Furthermore, I think that we have to distinguish between the ex post facto error on the one hand and the arrest record claim on the other hand. Did the court say what its guideline would be or what it, how, I mean, did the, just before we even get to the arrest record point on the ex post facto? Well, the court does say in its sentencing, and I'll move to that, and I would ask that the court just consider that I'm also speaking now about the substantial rights issue on the arrest record because I think the analysis starts to merge when you look specifically at what the district court explained on the record. The first thing the district court said as it was pronouncing sentence, and this is at page 102, is there's a child sexual assault conviction. The next thing the district court says is there's a failure to register. The next thing the district court says is there's a failure to identify, and then the next thing they said, the district court says is there is a DWI. Only then does the district court then, in reciting the criminal history of Mr. Aragon, say another sexual assault arrest, not a prosecution, but nonetheless an arrest in 2001. The district court then says all these serious crimes, referring to the criminal history it just recited, and he's been here twice. That refers to his unlawful entries into the United States after removal. Okay, then the district court, after reciting the facts of the criminal history, starts in with the statutory sentencing factors, not the guidelines, starts first with safety of the community, moves to promoting respect for the law, moves to consideration of just punishment, and then says, quote, all the other 3553A factors that 60 months is right. The judge did make a remark that the 60 months was not the bottom of the guideline. It was near the bottom of the guideline, but then she immediately returns to saying 60 months is not too much and not too little to comply with the statutory sentencing factors. That's critical in this case, that the district court's sentence was based on statutory sentencing factors. The 60 months sentence is not obviously pegged in any way to the guidelines beyond that one remark. It's not the bottom of the guidelines. It's not really in the middle of the guidelines. It's 60 months. It's five years. It's half the statutory maximum. That's just a further indication that the district judge here was considering the statutory sentencing factors, and that's what precludes showing of an effect on substantial rights on the arrest record issue, but it also, when read in tandem with what the district judge specifically said about the ex post facto issue, shows you that on the one hand, there's harmlessness, and on the other hand, there's no effect on substantial rights. The government does not, however, concede that there is a bare arrest record problem here. The information in the PSR, which the district court adopted... Can I ask a question? I'm sorry. Yes, Your Honor. The district court invoked the position of its sentence it selected within the incorrect guideline range, so that's, you know, you've just explained that it's statutory, not guideline, but the district court specifically relied on its position within the incorrect guideline range. And so, can you address that? That's just not how I read the record, Your Honor. I think, again, starting with the explanation... That was kind of at the lowest end of the improperly calculated guideline range. Right, but it's not... I don't think the bare mention of where it happened to fall is necessarily indicative that the sentence was tied to the guideline range. The defendant here was asking for a downward departure and the alternative wanted, obviously, a sentence at the low end of the guidelines. I think the judge was just remarking where the sentence happened to fall. Again, with respect to the way the district court laid it out on the record. Okay, you might continue. With respect to the arrest record issue, the record here is not what this court referred to as bare and Harris, and it's certainly not clearly or obviously so. It indicates how the offense was committed based on a charging instrument and included a disposition. That offense was a criminal attempt at sexual assault. The paragraph described how the defendant committed the offense by placing hands on the woman's breasts and unfastening her shorts against her will. My friend decries that there was any opportunity or reason to object to that paragraph, but if you take a look at the record at page 131, the defendant objected to far more innocuous, especially in what would be innocuous in his view, factual errors in the PSR. So certainly there was an opportunity to object to that conduct. The district court adopted the PSR, and that's clear from both its statements, its sentencing referring to the arrest and in its statement of reasons. So those are respectively at 92 and 154 of the record. This court in Johnson credited statements by the district court on the record and adoption of the PSR as indicating that it adopted the information in the record. The one factual issue I want to try to clear up for the court, in the appellant's brief, when they describe the district court saying, I don't know if they did what the prosecutor said they did. What the district court was talking about there was the prosecutor had made the representation that following the sex assault arrest, the defendant's community supervision for the prior sex offense was continued by five years. And the thrust of that point, if you read the PSR in tandem, pages 114 and 115 of the record, is that there's no other apparent reason why the state would have moved to revoke the defendant's deferred adjudication community supervision. And so what the district judge was saying there was, well, I don't know why they moved to adjudicate or why the community supervision was extended. She wasn't saying that, gosh, we have no idea what happened factually with the circumstances of the arrest. I would also dispute my friend's characterization of this as a charge that never was. There was a charging instrument here. There was a criminal complaint which has to be sworn out before a magistrate. That magistrate finding is one of probable cause. And I think that's important for purposes of whether this is a bare arrest record because we know that the facts that are alleged in the PSR come from an affidavit by a peace officer of the state. With respect to the notion that the court should relax its review, the court's line of cases, including Rogers, Brown, Alexander, Lopez, especially Rogers and Brown, are not close to this case in terms of the similarity of the errors asserted. In Rogers, the two errors had to do respectively with the idea that there was some problem with violation of the rule of sequestration in the case versus the actual argument on appeal about a problematic in-court identification. So there, what the court said, we will go ahead and consider the problematic ID complaint was based on the fact that the defense counsel was upset that an FBI agent went out and possibly spoke with a witness during a recess. In Brown, it was a pretrial motion dismissed based on ex post facto concerns that the court decided was sufficient to allow consideration of an ex post facto issue with respect to the jury instructions. So very closely related there. In Alexander, the court, it's not clear to me, Brown and Rogers and subsequent case law's reading of Alexander that it says specifically that constitutional errors are more readily recognized. The court there recognized its discretion to decline to review, but the court there decided to analyze an issue not raised because it understood that issue to be necessary to resolving the ultimate suppression issue. And that question was whether postal inspectors had any authority to affect an arrest at all. Uh, finally, Lopez, uh, Lexus Nexus head note eight, which recites the proposition of constitutional errors being noticed more readily. I don't find that that had notice ever been cited and other case law that I've seen, um, repeats the language, but it doesn't necessarily affect the outcome of the case. Mr. Portugal. Yes, Your Honor. Uh, I was concerned. Look, reading the transcript that the government wasn't more helpful to the district court on the ex post facto issue. Um, during the proceeding, you know, you readily conceded it here. Uh, it seemed like it was a complicated explanation that was not. Okay. Do you have any comment on that of how that was handled? I can comment on that, Your Honor. It's not on the record, but I'm happy to explicate for the court what what was going on. Uh, we had we had challenged in Martinez of I A the position of the federal public defender that this would be an ex post facto violation, and we had a number of cases in the district, including this case where we were trying to violation. But when you lost that, then you realize now that you that's correct? Yes, Your Honor. So it was still live at the summit. It was still live. And and even and maybe not in this case, but even in perhaps one other case I might be aware of, we kind of obvious. It's the problem is so when I was reading the transcript, right? It is obvious in light of that was my case, and I certainly I didn't think it was obvious. That was also further. I didn't I didn't mean to derail you here. Let's I think I made all the points I wanted to make your honors. I'm happy to try to answer any questions the best of my ability. But if if you have none, I will rest on the brief and and ask that you affirm the judgment. Okay, thank you. Thank you. Mr. Wright, you have some time rebuttal, but I have a question. You know, you've spent some time explaining that you didn't think that that your colleague needed to object regarding the alleged bear arrest record. But when the is considering that, and is discussing that, it seems like at that point, you know, it would be danger, we need to step in and say, No, you're not supposed to consider that, Your Honor. That so if that was so maybe it wasn't a written objection to the PSR, but it was certainly should have been required once the hearing started getting derailed in this way. You're on mute. Thank you, Your Honor. First one. You're right. It would have been better to object at the time or immediately after the sentence. And we talked about that. I also want to correct one thing that I said before, on page 197 of the record and footnote to which was the response or the reply in support of the motion for downward departure, you'll find that the council did say there was no bill, you're relying on the PSR's finding. So there was a comment on the reliability of these allegations at the time. But I will agree with you that there was not a post announcement objection. It was probably too late at that point. Again, the court had heard argument and had announced it's sentence that it was going to impose. But I agree, we could have objected after that and said, one of those reasons that you gave is constitutionally impermissible. And I will concede that we did not do that. On whether there are statutory sentencing factors to be weighed against the guideline range and which one guided the court, one of those statutory sentencing factors is the applicable guideline range. So every time that the court said it's considering all of those 3553A factors, that's not separate from the guideline range. The guideline range comes right along by incorporation. Why would the parties spend so much time on this issue that was live, it was still hotly disputed, if it wouldn't matter? They wouldn't, because they understood that the guideline range, as it does in most cases, would play a driving force. It would play an important role in selecting the sentence. And returning to the reasonable doubt standard, the Fifth Circuit pattern jury instruction asks the jury to decide, would you rely on these facts in the most important of your daily affairs? I will not deny that there is language in the court's opinion, in its explanation, read in isolation, that supports the idea. We very well make it the same sentence at the end. But there is so much other evidence that weighs the other way, substantial mitigation. The comment that the sentence was near the bottom of the guideline range. I do want to point out, if you will read in Note 8 of Pew, which is the note that discusses harmlessness as a possibility, there may be cases where it is clear. The Supreme Court said the government could not satisfy it there because they applied the new guidelines, indicated that a sentence within the guideline range is most appropriate sentence in this case. It would fail. Now, I will concede there was not a separate statement here. I would do the same thing. But what I'm saying is the Supreme Court said that language would preclude a finding of harmlessness on that record, which the government didn't advance there. So it is not obvious or clear that the district court would and will impose the same sentence on remand. On your bear arrest claim, what's to preclude us from I guess because you know, we do use that prong for you do. There was a recent published case that said you wouldn't use criminal history for that anymore. But this court, like the district court, is precluded from relying on an arrest. And it and again, it even if it were reversible on its own sake, it does stop you from making the findings required and rebar Luna, which, again, has been disputed. That's the right standard. The judge can't use the same reasons because one of those is impermissible. The Constitution binds this court the same way that it bound the district court judge. And the touchstone is, did the court rely on the arrest without finding that the defendant committed the crime? If the court had found that he committed the crime, then we could be fighting about whether there was an adequate evidentiary foundation. And there wasn't. And we would deal with the fact that it's directly contrary to either the lack of charge or the grand jury's no finding. But it didn't. The court said there was an arrest for that purpose in terms of tell us whether or not it did or didn't. It would be difficult to avoid the ex post facto violation. And I think that the proper result here would be to remand for a reason and think that is consistent with the federal Constitution. That's all we're asking for your honors. Thank you. We have your argument. We appreciate both of you appearing via Zoom today so that we could facilitate a timely argument in this case. And this case is submitted. And this concludes the sitting in the court will stand adjourned pursuant to the usual order.